**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL ANDREWS, etc., et al.,

        Plaintiffs,

vs.                                          Case No. 3:06-cv-704-J-32TEM

CSX TRANSPORTATION, INC., et al.,

        Defendants.

_____

## <u>ORDER</u>

    Plaintiffs in this consolidated action bring claims under the Family Medical Leave Act ("FMLA"). 29 U.S.C. § 2601, *et seq.* (Doc. 50.)[1] The Court considers the following motions for summary judgment filed by defendants (Docs. 129, 135, 139, 143, 145, 151), plaintiffs' responses (Docs. 173, 174, 175, 176, 178, 179) and the exhibits filed by the parties; Defendants' Motion For Sanctions (Doc. 186) and plaintiff's response (Doc. 187); and filings related to settlements of pending claims. (Docs. 126, 165, 166, 180, 181, 182, 183, 184, 185, S-18, S-19.)

_____

    [1] This case was previously divided into Complaint "A" and Complaint "B." The Court here addresses only those claims brought in Complaint "A." (Docs. 49, 50.) The plaintiffs in Complaint "A" are Michael Andrews, James H. Adams, Charisse Bell, Juliet Christie, Harold Fisher, Marcie Hoerig, Tammy Howard, Anita Humphrey, Billy Knowles, Lettie McClain, Deanna Miller, Rodney Puckett, Muzette Robinson, Jennifer Saul, Tracey Thompson, and Kathy Warren. The named defendants are CSX Transportation, Inc. ("CSXT"), CSX Intermodal Inc. ("CSXI"), and CSX Corporation ("CSXC").

This Order is a continuation of an earlier Order disposing of motions for summary judgment as to other plaintiffs' claims in this case. (Doc. 188.) The legal precepts set forth in that previous summary judgment Order are incorporated into this Order and are not repeated here.

## I.   Lack of Subject Matter Jurisdiction

Plaintiffs' complaint fails to differentiate among defendants CSXT, CSXI and CSXC. However, CSXT, CSXI, and CSXC are separate corporate entities within the CSX family of companies. (Doc. 84-1 at 5 (Mateer Decl. ¶ 13).) At times material, "final decisions regarding FMLA eligibility and other FMLA matters with respect to a particular employee are made by the CSX entity that employs the employee." (Id.; see also Doc. 83-2 at 17 (Dove Decl. ¶ 48).) The corporate entities that are not the direct employer of each individual plaintiff are entitled to judgment as a matter of law. Wascura v. Carver, 169 F.3d 683, 685 (11th Cir. 1999)("where a defendant in an FMLA suit does not meet the statutory definition of 'employer,' there is no federal subject matter jurisdiction over the claim against that defendant"); 29 U.S.C. § 2611(4); see also (Doc. 188 at 6-7). Plaintiffs' claims against the corporate entities that are not their employer are due to be dismissed for lack of subject matter jurisdiction.

## II.   Resolved Claims

### A.   Settled Claims

The Court has been informed that the claims brought by plaintiffs Juliet Christie, Harold Fisher, Rodney Puckett, and Lettie McClain have been settled. (Docs. S-18, S-19.)

2

The Court will direct the parties to file papers to close out these claims.

### B.   Stipulations For Dismissal

Before the Court are three Stipulations For Dismissal Pursuant To F.R.C.P. 41(a) with prejudice as to the claims brought in Complaint "A" by plaintiffs James Adams, Anita Humphrey (in Count I) and Charisse Bell.  (Docs. 126, 165, 166.)  Defendants consent to these dismissals.  (Doc.  S-18.)  Accordingly, these claims are due to be dismissed with prejudice.

### C.   Motions For Dismissal

Plaintiffs have filed three Motions For Dismissal Pursuant To F.R.C.P. 41(a)(2) seeking to dismiss with prejudice the claims brought in Complaint "A" by plaintiffs Tammy Howard, Jennifer Saul and Tracey Thompson. (Docs. 180, 181, 182.) Defendants have filed responses to the motions, saying that they do not object to the dismissal of plaintiffs' claims with prejudice, but contending that the Court's dismissal order should require each plaintiff to pay defendants' costs pursuant to Rule 54(d)(1), Federal Rules of Civil Procedure. (Docs. 183, 184, 185.)

A voluntary dismissal of a claim with prejudice operates as an adjudication on the merits in favor of defendant, and the defendant is considered the prevailing party. Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007); Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 911 n.63 (11th Cir. 1997); see also Gibson v. Walgreen Co., No. 6:07-cv-1053-Orl-28KRS, 2008 WL 4610239, at *2 (M.D. Fla. Oct. 16, 2008).  Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs - other than

attorney's fees - should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Under

Rule 54(d), there is a strong presumption that the prevailing party will be awarded costs."

Mathews, 480 F.3d at 1276.  These claims are due to be dismissed with prejudice, and

defendants are awarded costs for these three claims, as contemplated by 28 U.S.C. § 1920.

See id.

### D.      Defendants' Motion For Sanctions

The Court defers ruling on Defendants' Motion For Sanctions (Doc. 186) and will hear

argument of counsel at a hearing to be scheduled.

## III.    Defendants' Motions For Summary Judgment On Plaintiffs' Claims[2]

### A.      Michael Andrews (Count I: "Discipline/Termination Under Absenteeism Policy")

#### 1.    Facts

Plaintiff Michael Andrews alleges that "CSX" violated his rights under the FMLA when

it terminated him for excessive absenteeism because, he alleges, "six of the nine attendance

failures that plaintiff Andrews was charged with were due to a serious medical condition"

and "defendants, CSX, never informed plaintiff Andrews that these absences could be

---

[2] Consistent with summary judgment practice, the facts stated are either undisputed or are stated in a light most favorable to the plaintiffs.  See Galvez v. Bruce, 552 F.3d 1238, 1239 (11th Cir. 2008); White v. Mercury Marine, Div. of Brunswick, Inc., 129 F.3d 1428, 1430 (11th Cir. 1997).

In these cases, the parties do not dispute that the individual plaintiffs are eligible employees, 29 U.S.C. § 2611(2) and that the employer of each plaintiff is an eligible private sector employer.  29 U.S.C. § 2611(4).

certified under the FMLA, until after he was charged with excessive attendance failures."

(Doc. 50 (2d Am. Compl. ("Compl.") ¶¶ 28, 29).) Andrews alleges that he had informed his

employer of his serious medical condition and that the "defendants, CSX, failed in its duty

under FMLA to inform plaintiff of his eligibility for FMLA" in violation of 29 C.F.R. §

825.208(a) and (b)(1), which then "allow[ed] him to be subject to the absenteeism policy, and

leading to his termination." (Id. ¶¶ 31, 35, 36.)

Defendants argue they are entitled to summary judgment because 1) attendance

failures charged to Andrews were not covered by the FMLA; 2) Andrews did not put CSXI

on notice fo his alleged FMLA-qualifying reasons for his absences nor request FMLA leave

for his absences; and 3) CSXI fulfilled its employer-notice obligations under the FMLA. (Doc.

129 at 2.)

Andrews worked for CSXI from April 1, 1999 through February 23, 2006 when he was

terminated for excessive absenteeism. (Doc. 130-1 at 4, 5 (Andrews Dep. at 10, 20).)[3] Early

in his employment with CSXI, Andrews was disciplined for excessive absenteeism. The

discipline is documented in letters to Andrews from the CSXI director of administration dated

December 8 and 9, 1999, which state that Andrews was absent a total of 13 days between

June 8, 1999 and December 7, 1999. Andrews accepted responsibility, waived a hearing

under his collective bargaining agreement, and was placed on probation for a six month

period. Andrews was again disciplined for excessive absenteeism ("attendance failures")

---

[3] Defendants CSXT and CSXC are entitled to judgment as a matter of law on Andrews' claim because they were not Andrews' employer. 29 U.S.C. § 2611(4).

on May 3, 2004 (20-day suspension) and January 27, 2005 (5-day suspension).  (Doc. 130-1 at 54 (Andrews Dep. Ex. 1).)[4]   The final 2005 discipline resulting in termination of employment marked the fourth time that Andrews was disciplined for excessive absenteeism.  Throughout his employment, Andrews had "marked-off" "sick" due to arthritis in his wrist, "back pain, flu, heart trouble, toothache, bronchitis, anxiety, mental problems, and a spider bite."  (Doc. 129 at 5 (citing (Doc. 130-1 at 16, 22, 29-32, 42 (Andrews Dep. at 34, 49, 66, 75-77, 107); Doc. S-5.)

Andrews testified at the investigative hearing that when he notified his employer CSXI of his absences in 2005, "I would just call them up and tell them I'm . . . having to mark off and I hate to but I'm sick."  (Doc. 130-2 at 66)(Andrews Ex. 15).)  Andrews said that he informed his supervisors of his illnesses upon his return to work and provided the required doctors' notes.  All but one of the doctors' notes provided by Andrews failed to specify Andrews' medical condition, and all of the notes stated that Andrews was fit to perform his job duties.  (Doc. 130-1 at 23, 30-33 (Andrews Dep. at 52, 75-78); S-5 (Andrews Dep. Ex. 14).)[5]  Andrews' supervisor, CSXI operations manager John Featherston, testified that he

---

[4]   The Employee Discipline Report for Andrews also indicates that Andrews was disciplined between 2002 and 2005 six additional times for such infractions as "unlawful harassment," "unsafe conduct," "misrepresentation of facts," and "failure to protect assignment."  (Doc. 130-1 at 54-55 (Andrews Dep. Ex. 1).)

[5]  Andrews' supervisor John Featherston testified that the company required employees to provide a doctor's note indicating they had been seen and treated by a physician and that the employee was ready to return to work.  "We do not pry into the nature of his illness." (Doc. 130-2 at 37 (Andrews Dep. Ex. 15).)

was not aware of a medical condition that would have qualified Andrews for FMLA benefits; "that is not information that is something he has provided unless he voluntarily comes forth, and without that information I have no way of recommending FMLA." (Doc. 130-2 at 39 (Andrews Dep. Ex. 15).)

It is undisputed that Andrews was absent or late the following dates and stated reasons:

| | |
|---|---|
| 7/28/05-8/1/05 | marked off 3 days: sick |
| 8/22/05 | marked off 1 day: other-family emergency |
| 9/13/05 | marked off one day: sick |
| 9/14/05 | 45 minutes late to work; doctor appointment |
| 9/27/05 | marked of 1 day: other-car trouble |
| 11/30/05-12/2/05 | marked off 3 days; sick |
| 12/6/05 | 1 hour 20 minutes late to work |
| 12/7/05-12/9/05 | marked off sick during shift (paid time worked 12/7) |
| 12/29/05-12/30/05 | marked off sick |

totaling fifteen days of missed work and constituting nine "attendance failures." (Doc. 130-3 at 13, 73 (Andrews Dep. Exs. 15, 19); Doc. 129 at 6.)[6]

_____

[6]   Andrews testified that his absence from July 28 through August 1, 2005 was due to a "spider bite" (Doc. 130-1 at 43-44 (Andrews Dep. at 108-09); Doc. S-5 (Andrews Dep. Ex. 14)); Andrews' absence for a "family emergency" on August 22, 2005 was because his nephew had stolen his car keys (Doc. 130-2 at 45 (Andrews Dep. Ex. 15)); Andrews' absence on September 13 and tardiness on September 14, 2005 was due an anxiety attack and a doctor's appointment the next day which Andrews does not recall telling his supervisor about, the doctor's note makes no reference to Andrews' medical condition, and Andrews himself said that his condition was "nothing that would make me disabled or not be able to perform my job" (Doc. 130-1 at 30-31, 45-46 (Andrews Dep. at 75-76, 111-12); Doc. S-5 (Andrews Dep. Ex. 14)); Andrews' absence on September 27, 2005 was due to "car trouble" because his car was "in the shop" and Andrews stated he was unable to find a ride to work (Doc. 130-2 at 48 (Andrews Dep. Ex. 15)); Andrews' absence on November 30 to December

On January 3, 2006, Featherston, in a letter to Andrews, charged Andrews with "excessive attendance failures," citing the absences between July 28 and December 30, 2005, which was "more than six attendance failures in the last six months."  A hearing on the charges was scheduled for January 26, 2006.  Andrews' employee union representative was also notified of the hearing.(Doc. 130-3 at 13-15 (Andrews Dep. Ex. 15).)

On January 4, 2006, the date Andrews signed acknowledgment of the discipline letter, Featherston told Andrews that if Andrews was suffering from an ongoing medical condition, "it might have been something that you could have explored in the past and gotten some of these to have been part of your FMLA, in which case it would not become a part of this attendance occurrence, and it's something that in the future you might want to consider if your condition falls under the guidelines."  Featherston directed Andrews to the company bulletin board information about the FMLA.  (Doc. 130-2 at 35, 41 (Andrews Dep. Ex. 15).)  Featherston said that he did not "have a lot of detailed knowledge about what Mr. Andrews' condition is" and still has "no first-hand knowledge of what Mr. Andrews' ongoing problem

---

2, 2005 was due to "bronchitis" that was "going around;" he said that the symptoms went away after he took antibiotics (Doc. 130-1 at 47-48 (Andrews Dep. at 114-15)); Andrews was tardy on December 6, 2005 because of a doctor's appointment, though Andrews never provided his supervisor any additional information about the appointment (Doc. S-5 (Andrews Dep. Ex. 14); Doc. 130-2 at 49 (Andrews Ex. 15)); Andrews' absence from December 7 through 9, 2005 was to have a benign growth removed from his groin on an out-patient basis in his doctor's office (for which he had never previously missed work) (Doc. 130-1 at 49-51 (Andrews Dep. at 116-18); Doc. S-5 (Andrews Dep. Ex. 14)); Andrews' absence on December 29 and 30, 2005 was due to  what he believes was a relapse of bronchitis.  (Doc. 130-1 at 52 (Andrews Dep. at 119); Doc. S-5 (Andrews Dep. Ex. 14); see also Doc. 178 at 2.)

is."  (Id. at 33, 35, 41)

A hearing on the January 3 disciplinary charge was conducted on January 26, 2006. Andrews was accompanied by his union representative and had the opportunity to present witnesses and documentary evidence.  (Doc 130-1 at 33-36 (Andrews Dep. at 78-81); Doc 130-2 (Andrews Dep. Ex. 15).)

The first (and only) time Andrews ever sought FMLA leave was on February 10, 2006, when he submitted to CSXI an FMLA doctor's certification reporting a "serious health condition," in which chiropractor Dr. C.C. Reid stated that the "patient [Andrews] hurt himself picking up a trash can" "approximately 3 weeks before 1-27-06 [which would be January 6, 2006]."  The prognosis remained "undetermined until reexam scheduled on 2-11-06."  The chiropractor said that Andrews had been provided with a 10-day treatment program with a reexam, and physical therapy.  (Doc. 178 at 3;  S-5 (Andrews Dep. Ex. 17).)  The FMLA leave request was approved February 17, 2006, retroactive to leave in accordance with Andrews' request, from January 30 through February 10, 2006.  (Doc. 130-3 at 72 (Andrews Dep. Ex. 18).) Andrews never submitted an FMLA claim for any of the medical conditions which occurred between July 28 and December 30, 2005, for which he was disciplined by termination.  (See Doc. 130-3 at 75 (Andrews Dep. Ex. 21).)[7]

On February 23, 2006, hearing officer Robert J. Meizinger wrote to Andrews

---

[7]   There is no evidence that Andrews was "certified for intermittent FMLA leave" at "all times relevant," as alleged in paragraph 25 of the Second Amended Complaint.  (See Doc. 50 at 5 (Compl. ¶ 25).)

concerning the outcome of the hearing regarding his January 3 disciplinary notice for excessive absenteeism.  Meizinger stated:

> Your testimony clearly indicates that you were aware of FMLA when you signed for the HUB Rules on March 1, 2000 and had received notification by "Notice to all Employees" dated May 23, 2005 and at no time did you inform or ask anyone about FMLA or it's [sic] application regarding your alleged medical condition. In addition, the attendance guidelines have been posted at the location for several years and you were aware of the instructions contained therein.

(Doc. 130-3 at 73 (Andrews Dep. Ex. 19).)  After finding Andrews at fault, the hearing officer said after considering Andrews' employment record, "it was determined that discipline in this matter would be termination of your employment effective immediately."  (Id. at 74.)  The union appealed the termination to an arbitration board, which on April 18, 2008, upheld the termination.  (Doc. 130-3 at 75 (Andrews Dep. Ex. 21.)

Andrews acknowledged that he received the company's attendance guidelines.  (Doc. 130-1 at 19 (Andrews Dep. at 40)) which provide that "[e]mployees who have been absent, tardy, or a combination thereof, on more than six occasions in a six month period" will have their attendance reviewed by their supervisor, and may, "[w]hen appropriate," be subject to disciplinary action "up to and including dismissal from service, after an appropriate investigation of the circumstances."  (Doc. 130-3 at 69-70 (Andrews Dep. Ex. 15).) Additionally, Andrews acknowledged that he received a copy of the company's General Regulations every year he was employed.  (Doc. 130-1 at 8 (Andrews Dep. at 26).)  The regulations require employees to review each day material posted on the company bulletin

10

board located in the employee break room.  (Doc. 130-1 at 9-10 (Andrews Dep. at 27-28).)

Prior to 2005, the company bulletin board displayed a poster entitled "Your Rights Under the

Family Medical Leave Act of 1993" with information about the FMLA which Andrews admits

he reviewed, in part.  (See Doc. 178 at 1.)  After reading the first two paragraphs, Andrews

said he did not read any more of the information because he believed that the FMLA

pertained only to families and not to him as a "single man. " Andrews acknowledged that he

did not read the entire document because the first two paragraphs were "misleading."  (Doc.

130-1 at 10-14 (Andrews Dep. at 28-32).)   Andrews understood that certain medical

absences could be covered by the FMLA "[i]f I had had a family."  (Id. at 12 (Andrews Dep.

at 30).)  Andrews never spoke with his supervisors or the company human resources

department about the FMLA.  (Id. at 15-16 (Andrews Dep. at 33-34).)

Andrews also admits that CSXI employees received a bulletin on May 23, 2005 that

included CSXI's FMLA poster and were instructed to "read the following pages carefully" to

ensure they "understand this procedure."  (Docs. 129 at 4;178 at 2; 130-3 at 65-68 (Andrews

Dep. Ex. 15).)

### 2.    Discussion

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or

attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  "'Interfering

with' the exercise of an employee's rights would include, for example, not only refusing to

authorize FMLA leave, but discouraging an employee from using such leave."  29 C.F.R. §

825.220(b)(2006).[8]  Andrews argues that CSXI "improperly interfered with his right to take intermittent medical leave."  (Doc. 178 at 6.)[9]

### a.      Andrews Failed to Provide Sufficient Notice of a "Serious Health Condition"

Andrews contends that CSXI "failed to provide specific or individual notice of FMLA leave to Mr. Andrews including but not limited to simply providing him with a medical certification form to have completed by his health care provider for each of the events." (Doc. 178 at 3 (citing 29 C.F.R. § 825.301(b)).)  Andrews contends that the information CSXI had, including the notes from the doctors "stating that he was treated and that he was cleared to return to work . . . satisfies the <u>initial</u> notice of leave to trigger the employer's duty to send out a medical certification form for completion."  (Doc. 178 at 11 (emphasis in

---

[8]    The Department of Labor's FMLA regulations were revised, effective January 16, 2009.  <u>See</u> 73 Fed.Reg. 67934 <u>et seq.</u> (Nov. 17, 2008).  The revised regulations were not in effect at any time relevant to plaintiffs' claims and when their lawsuit was filed in 2006.  Reference to regulations are to those published in the July 1, 2006 Code of Federal Regulations.  The parties do not dispute the reference to the 2006 regulations.

[9]    Andrews, in his response to defendants' motion for summary judgment, for the first time, contends that his FMLA claim is based on both retaliation *and* interference pursuant to 29 U.S.C. § 2615(a). (Doc. 178 at 5, 12.)  Plaintiff's complaint does not allege a retaliation claim.  Rather, Andrews alleges that defendant "terminated plaintiff Andrews on February 23, 2006; due to his excessive absence failures" and that defendant "failed to inform plaintiff Andrews of his eligibility for FMLA in due course, allowing him to be subject to the absenteeism policy, and leading to his termination."  (Compl. ¶¶ 33, 36.)  Andrews cannot raise this new unpleaded claim in his response to a motion for summary judgment without first obtaining leave to amend his complaint. <u>See</u> <u>Gilmour v. Gates, McDonald and Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004).  Given the issues as framed by plaintiff in his complaint, the Court does not consider plaintiff's argument that he was terminated in retaliation for exercising his FMLA rights in February 2006.

original)).  Andrews focuses on the requirement of implementing regulation 29 C.F.R. §

825.301(c) which requires that upon receipt of the employee's "notice of the need for leave,"

the employer must provide written guidance of the employee's rights and responsibilities

under the FMLA, including any requirements for the employee to furnish medical certification

of a serious health condition and the consequences of failing to do so.  29 C.F.R. §

825.301(a)(2), (b)(1)(ii) and (c).  As framed by Andrews, "[t]he issue to be determined is

whether Mr. Andrews sufficiently provided either verbal and/or written notice of his need for

leave; and then in response did [CSXI] provide individual notice of the procedures to apply

for FMLA which would include providing a medical certification form."  (Doc. 178 at 10.)

"Under [regulation] § 825.301(c) of the FMLA, the detailed employer written notice

obligation . . . arises only after an employee gives sufficient information to the employer to

apprise it of the need for leave due to a serious health condition.  If an employee gives

insufficient or no notice of a serious health condition, § 825.301(c) does not apply.  If [the

employee] failed to properly notify [his] employer of [his] need for leave, [the] employer would

be under no obligation to comply with the requirements of 29 C.F.R. § 825.301(c)." Sanders

v. May Dept. Stores Co., 315 F.3d 940, 945 (8th Cir. 2003); see also Robinson v. Overnite

Transp. Co., 110 F.3d 60, 1997 WL 165416, at *8-9 (4th Cir. 1997)(employer's duty to

explain to employee his rights and responsibilities required by 29 C.F.R. § 825.301(c) not

triggered because employer was never on notice of employee's need for FMLA

leave)(unpublished opinion).

Both the employee and the employer have specific notice requirements pursuant to

the FMLA and its implementing regulations.  See 29 U.S.C. § 2612(e)(1) and (2), 2613; 29 C.F.R. §§ 825.208, 825.300, 825.301, 825.302, 825.303, 825.304, 825,305.  "An employee shall provide at least verbal notice, sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."  29 C.F.R. § 825.302(c); see also Lowery v. Strength, 356 F. App'x 332, 333 (11th Cir. 2009).  "[A]n employee giving notice of the need for . . .  FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave."  29 C.F.R. § 825.208(a)(2); see also  Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1383 (11th Cir. 2005)(citing 29 C.F.R. §§ 825.302(c), 825.303(b)).  "The FMLA does not require that an employee give notice of a desire to invoke the FMLA.  Rather, it requires that the employee give notice of *need* for FMLA leave.  This kind of notice is given when the employee requests leave for a covered reason.  After a notice of this sort the employer can inquire further to determine if FMLA applies."  Price v. City of Ft. Wayne, 117 F.3d 1022,1026 (7th Cir. 1997).   Indeed, "the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed."  Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th Cir. 1998); see also  29 C.F.R. § 825.303(b)("[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed").

A period of absence alone is not adequate notice under the FMLA.  Phillips v.

Quebecor World RAI, Inc., 450 F.3d 308, 311 (7th Cir. 2006).  Nor does an employee's reference to being "sick" "'suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable.'" Id. at 312 (citation omitted). Additionally, a doctor's note that fails to specify the medical reason for the employee's absence does not provide the employer with sufficient notice of a potentially FMLA "qualifying reason." See Lowery, 356 F. App'x at 334 (doctor's certificate and letters saying that employee was previously treated for depression and anxiety, that her absences were due to "medical reasons" and that employee could return to work did not inform employer that employee was currently suffering from a condition that might qualify her for FMLA leave).

"Once an employee gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection." Cruz, 428 F.3d at 1383 (citations omitted). "The employee cannot merely demand leave; he must give the employer a reason to believe that he is entitled to it." Id., 428 F.3d at 1385.  "The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303.  The FMLA does not "require employers to engage in intrusive inquiries to determine whether the FMLA applies." Manuel v. Westlake Polymers Corp., 66 F.3d 758, 763 (5th Cir. 1995); see also Cruz, 428 F.3d at 1385 ("[u]nless the employer already knows that the employee has an FMLA-approved reason for leave, the employee must communicate the reason for the leave to the employer"); Gay v. Gilman Paper Co., 125 F.3d 1432, 1434-36 (11th Cir.

1997)(employee's husband's phone call to employee's supervisor that employee was "in the hospital for tests" did not supply employer with sufficient information to make employer aware the employee's absence was due to a potentially FMLA-qualifying reason, as required to trigger employer's burden to request further information).   "Requiring employers to determine whether leave is covered by the FMLA every time an employee was absent because of sickness would impose 'a substantial and largely wasted investigative burden on employers.'" Phillips, 450 F.3d at 312.[10]

Andrews and CSXI do not dispute the nature of the communications which occurred between Andrews and CSXI concerning his absences.  Nor do they dispute that CSXI, upon sufficient notice, would have specified duties under the FMLA.  But the scant information provided by Andrews to CSXI was insufficient to shift the burden to CSXI to request further information or to provide the individualized notice required by 29 C.F.R. § 825.301(c).  CSXI could not reasonably be expected to conclude that Andrews had expressed the "need for [FLMA] leave" when phoning in "sick" or providing doctor's notes for unspecified ailments, or that any of Andrews' absences qualified for FMLA leave.  See de la Rama v. Ill. Dept. of Human Servs., 541 F.3d 681, 687 (7th Cir. 2008).  Thus, CSXI had no notice of Andrews' alleged need for FMLA leave, and thus no resulting duty.  See Stoops, 141 F.3d at 313.

---

[10]   In his complaint, Andrews makes reference to 2003 positive drug test, alleging that he had "contacted" defendant "regarding his serious medical condition previous to this time, when plaintiff Andrews had been pulled out of service due to a medication issue."  (Compl. ¶ 31.)  Andrews does not argue in his response to CSXI's motion for summary judgment that the 2003 positive drug test provides CSXI with notice of his need for FMLA leave in 2005, abandoning this argument.

Further, Andrews repeated absences were not for any chronic serious health conditions requiring continuing treatment by a health care provider or inpatient care, nor was Andrews ever incapacitated for any significant period of time. See 29 U.S.C. § 2612(b); 29 C.F.R. §§ 825.114, 825.203(a). Chronic absenteeism for varying reasons alone is not sufficient to put an employer on notice that an employee, who reports a variety of isolated singular non-qualifying reasons for the absences, may qualify for FMLA leave. See Cruz, 428 F.3d at 1385. The FMLA and its regulations "only require the employer to provide leave (or investigate further) if the employee gives notice of a 'qualifying reason.'" Stoops, 141 F.3d at 313-14.

### b.   No "Qualifying Reason"

Even if Andrews' notice was sufficient, it is irrelevant if he cannot demonstrate that he sought FMLA for a "serious health condition" qualifying him for FMLA leave, an essential element of an FMLA interference claim. The FMLA provides eligible employees with leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical facility; or . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11); see also 29 C.F.R. § 825.114(a)(1) and (2). A "serious health condition" involving "[c]ontinuing treatment by a health care provider" includes:

(i)   A period of incapacity . . . of more than three

17

consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

> (A)  Treatment two or more times by a health care provider . . .; or

> (B)   Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
> . . .

(iii)  Any period of incapacity or treatment for such incapacity due to a chronic serious health condition . . . which:

> (A)   Requires periodic visits for treatment by a health care provider . . . ;

> (B)  Continues over an extended period of time (including recurring episodes of a single underlying condition); and

> (C)    May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.) . . . .

29 C.F.R. § 825.114(a)(2).   "[T]he term 'serious health condition' is intended to cover conditions or illnesses that affect an employee's health to the extent that he or she must be absent from work on a recurring basis or for more than a few days for treatment or recovery. . . . The term 'serious health condition' is not intended to cover short-term conditions for which treatment and recovery are very brief.  It is expected that such conditions will fall within even the most modest sick leave policies."  S.Rep.No. 103-3 at 28 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 30.  Such ailments as "the common cold, the flu, ear aches, upset stomach,

minor ulcers, headaches other than migraine . . ." are not considered "serious health conditions." 29 C.F.R. § 825.114(c); see generally Stimpson v. United Parcel Service, 351 F. App'x 42, 49 (6th Cir. 2009)(citation omitted)("bruises and mild back pain" suffered in bicycle accident do not qualify as a "serious medical condition"); Morris v. Family Dollar Stores of Ohio, Inc., 320 F. App'x. 330, 334, 337 (6th Cir. 2009), cert. denied, 130 S,Ct. 418 (2009)("an outpatient needle biopsy with one follow up visit" is not a "serious health condition"); Beaver v. RGIS Inventory Specialists, Inc., 144 F. App'x 452, 456 (6th Cir. 2005)(bronchitis does not qualify as a "serious health condition" (citing cases)).

As a matter of law, Andrews' absences between July and December 2005, for which he was disciplined, do not qualify as a "serious health condition" for FMLA purposes. None of Andrews' absences were due to in-patient hospital care. Likewise, none of the absences due to illness qualify as requiring "continuing treatment by a health care provider." Twice Andrews was absent for three day periods, once for a "spider bite" and once for bronchitis. Both conditions resolved within days, and there is no evidence the bite or the bronchitis caused Andrews to be under "continuing" or "periodic" care or supervision by a health care provider for either medical event. The reoccurrence of bronchitis one month later was treated and resolved, and Andrews returned to work in two days. The remaining absences were of duration of two days or less, for anxiety, bronchitis, an out-patient procedure, and a doctor's appointment. By Andrews' own admission, he was qualified to return to work and able to perform his job duties after each short-term absence. Cf. Curry v. Newman, No. 98-8969-CIV, 2000 WL 1763842, at *5 (S.D. Fla. April 3, 2000)(granting summary judgment to

employer where doctors' notes provided by employee failed to state that she could not perform the duties of a clerk and thus were insufficient certification to justify FMLA leave). Andrews' absences at issue were due to different relatively minor medical events, none of them serious, and none of them continuing or connected. Because the undisputed evidence does not create a triable issue as to whether Andrews suffered from a serious health condition, as a matter of law he was not eligible for FMLA leave.

**B.    Marcie Hoerig (Count II: "Termination/Discipline under False Pretenses and Subterfuge")**

Plaintiff Marcie Hoerig was terminated by her employer CSXT[11] on April 11, 2006. The reason given by CSXT for the termination was that Hoerig was guilty of "conduct unbecoming an CSXT employee, insubordination, misusing FMLA leave, and abandoning her position during her regular shift on January 24, 2006." On that date, Hoerig "marked off" on FMLA leave during her work-shift after being told by her supervisor to fill in a vacant dispatcher desk job, telling the supervisor that the it was "not part of her job" and becoming upset. (Docs. 135 at 5; 173 at 2; 136-2 at 7, 21, 23-26, 89 (Hoerig Dep. At 20, 96, 99-102 & Ex. 25).) At the time, Hoerig was approved for intermittent FMLA leave for back spasms and aches. (Docs. 135 at 4 (with citations to record); 173 at 2.) Hoerig argues that her need for FMLA was related to her serious medical condition. CSXT contends that it had a "honest belief" that it was not.

---

[11]    Defendants CSXI and CSXC are entitled to judgment as a matter of law on Hoerig's claims because they were not Hoerig's employer. 29 U.S.C. § 2611(4).

### 1.   Hoerig's Interference Claim

"[T]o state a claim that his employer has interfered with a substantive FMLA right, a plaintiff need only demonstrate that he was entitled to but denied the right. He does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1208 (11th Cir. 2001). An employer can defeat an interference claim by showing, among other things, that the employee did not take leave "for the intended purpose." While the Court is skeptical about the ultimate merit of plaintiff Marcie Hoerig's FMLA interference claim, the Court is deferring ruling on the summary judgment motion.

### 2.   Hoerig's FMLA Retaliation Claim

To succeed on her FMLA retaliation claim, Hoerig must establish that CSXT "intentionally 'discriminated against [her] because [s]he engaged in activity protected by the Act.'" Foshee v. Ascension Health - IS, Inc., No. 09-16499, 2010 WL 2511384, at *1 (11th Cir. June 23, 2010)(quoting Strickland, 239 F.3d at 1206). When the plaintiff does not offer direct evidence of the employer's retaliatory intent, the court applies the McDonnell Douglas[12] burden shifting framework. Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010). Under this framework, the "plaintiff must first establish a prima facie case by demonstrating (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected

---

[12]   McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

activity." Id. "If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006). "If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual. Id. "'An employer articulates a legitimate, non-discriminatory reason for termination where an employer had an honest, good faith belief for termination, even if it turns out that the employer was mistaken in that belief.'" Hegre v. Alberto-Culver USA, Inc., 485 F. Supp.2d 1367, 1380 (S.D. Ga. 2007)(quoting Holmes v. W. Palm Beach Hous. Auth., 309 F.3d 752, 755 (11th Cir. 2002)). "[A] plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" Strickland, 239 F.3d at 1207 (citation omitted). Clearly, CSXT's "honest belief" is applicable to the analysis of Hoerig's retaliation claim.

Construing the evidence in favor of plaintiff, the Court will assume, without deciding, that Hoerig can establish a *prima facie* case; that is, that Hoerig exercised her FMLA right by taking qualified leave two-thirds of the way through her shift on January 24, 2006 and suffered an adverse employment action when she was terminated less than three months later. (The Court here presumes for purposes of this motion, that plaintiff can establish the requisite causal connection, though the evidence is that Hoerig had been taking FMLA leave since 2000 without adverse consequence to her job.)

The burden then shifts to CSXT to articulate a legitimate, non-retaliatory reason for

22

terminating Hoerig.  CSXT fired Hoerig[13] for insubordination, dishonesty, using FMLA leave under false pretenses, and abandonment of her position, contrary to employment rules. CSXT grounded its belief that Hoerig did not use her FMLA leave for the intended purpose of her serious health condition in the fact that Hoerig "marked off" for FMLA leave immediately upon being assigned an additional work task she clearly did not want to do, after an exchange of words with her supervisor.  This is corroborated by the testimony of Timothy Male, and documentation.

The burden then shifts back to Hoerig to show that the proffered reason for her termination was pretextual.

> Where the employer meets its burden, "the plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination" to avoid summary judgment. . . . A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." . . . A plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason. . . . However, a plaintiff cannot merely quarrel with the wisdom of the employer's reason, but "must meet the reason head on and rebut it."

Diaz v. Transatlantic Bank, 367 F. App'x 93, 96-97 (11th Cir. 2010)(citations omitted). Hoerig has proffered no evidence that CSXT's reason for firing her was pretextual.  She raises no genuine issue of fact that the stated reasons for her termination were false, nor can she demonstrate that CSXT's proffered reason did not actually motivate her discharge.

---

[13]   She was later reinstated to her position without back pay.

Judgment is due to be entered in favor of CSXT on Hoerig's FMLA retaliation claim.[14]

**C.    Anita Humphrey (Count II: "Termination/Discipline under False Pretenses and Subterfuge")**

**1.    Humphrey's Interference Claim**

Plaintiff Anita Humphrey contends that her employer, CSXT[15] violated her FMLA rights when it disciplined her (with a 10-day suspension) on July 10, 2006 for charges arising from her marking off for "a valid FMLA episode" on May 19, 2006.  (Doc. 174 at 1.)  On that date, Humphrey was testing a bicycle she was considering purchasing from a fellow employee in the CSXT parking lot during the middle of her shift.  A manager told her to stop riding the bicycle in the company parking lot during working hours; there is no dispute that the manager spoke to her in a civil, non-threatening manner.  Humphrey abruptly left work, claiming the need for FMLA leave.  CSXT disciplined Humphrey with a 10-day suspension contending that she left work early on May 19, 2006 under false pretenses.  CSXT argues that it is not liable to Humphrey for interfering with her FMLA rights because it had an "honest belief" that she was not using FMLA leave for its intended purpose.  Humphrey argues that she was exercising her protected FMLA rights because her "serious health condition" was "exacerbated by stressful conditions."(Docs. 139 at 4-5, 10 (citation to record); 174 at 2, 3

---

[14]    In view of the standards and burdens of proof on the parties set forth by the Eleventh Circuit in Strickland, 239 F.3d at 1206-1209, granting defendants' motion for summary judgment on Hoerig's FMLA retaliation claim is not inconsistent with denying summary judgment on her FMLA interference claim arising out of the same facts.

[15]    Defendants CSXI and CSXC are entitled to judgment as a matter of law on Humphrey's claims because they were not Humphrey's employer.  29 U.S.C. § 2611(4).

(citing Humphrey Dep. at 81, 83-85).)

Again, the Court is skeptical about the ultimate merit of plaintiff Anita Humphrey's FMLA interference claim, particularly given the circumstances underwhich she "marked-off" for FMLA leave on May 19, 2006.  However, the Court will defer ruling and set this motion for hearing for discussion of the "honest belief" issue and its applicability in the Eleventh Circuit.  See Strickland, 239 F.3d at 1208.[16]

### 2.    Humphrey's FMLA Retaliation Claim

CSXT contends that it had "an honest belief that her May 19, 2006 absence was not for a legitimate FMLA leave and that she was not using FMLA leave for its intended purpose."  (Doc. 139 at 2; see also Doc. 154-1 at 2-3 (Male Dep. at 52-53).)  Assuming that Humphrey has established a prima facie case, CSXT has met its burden of articulating a legitimate non-retaliatory reason for disciplining Humphrey for leaving work.  See Holmes, 309 F.3d at 755 ("[a]n employer articulates a legitimate nondiscriminatory reason for [discipline] where the employer had an honest, good faith belief in the reason for termination, even if it turns out that the employer was mistaken in that belief").  "To show pretext, a plaintiff must come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse

---

[16]   Other than CSXT's letter certifying Humphrey for intermittent leave, approving leave "for episodes and follow-up office visits . . . [and] an 8-hour work restriction," (Doc. 140-2 at 41 (Humphrey Dep. Ex. 29)), there is no evidence in the record as to the basis for the medical FMLA certification or exactly what Humphrey's "serious medical condition" was on the date in question.

employment decision." Hurlbert, 439 F.3d at 1298 (internal quotations and citations omitted).

Even if CSXT's "honest belief" ultimately proves to be incorrect and Humphrey's FMLA mark-off on the day in question was for the FMLA's "intended purpose," plaintiff has adduced no evidence that CSXT's "honest belief" was motivated by "an impermissible retaliatory or discriminatory animus." See Strickland, 239 F.3d at 1207. Judgment is due to be entered in favor of CSXT on Humphrey's FMLA retaliation claim.

>    **D.    Deanna Miller (Count II: "Termination/Discipline under False Pretenses and Subterfuge")**

Plaintiff Deanna Miller, a crew dispatcher with CSXT,[17] was terminated by her employer in April 2005 for her use of FMLA leave in late December 2004 and early January 2005.[18] According to CSXT, Miller was not approved and authorized to take FMLA leave during this time period, inasmuch as her medical certification for the medical condition of stress and anxiety was not submitted to the company's FMLA administrator until March 8, 2005. (Docs. 143 at 9; 156-1 at 5 (Dove 2d Decl. ¶ 21).) Miller contends that she "likely" mailed a medical certification dated December 21, 2004 to the "medical department" and that after learning of charges against her, she hand-delivered the certification letter to her supervisor on January 29, 2005, which would have covered her absences pursuant to

---

[17]  Defendants CSXI and CSXC are entitled to judgment as a matter of law on Miller's claims because they were not Miller's employer. 29 U.S.C. § 2611(4).

[18]  Miller took FMLA leave from her regularly scheduled shifts from December 30, 2004 through January 3, 2005, and January 8-10, 14, 2005 for "anxiety and depression and subsequent exacerbations of her conditions." (Doc. 179 at 5, 13 (with citations to record).)

company policy and governing regulations.  (Docs. 179 at 4 (citing Miller Dep. at 41-44 and Ex. 9); 144-1 at 20 (Miller Dep. at 41).)

### 1.    Miller's Interference Claim

CSXT argues that Miller's December 2004-January 2005 absences were not protected by the FMLA because she failed to timely submit a medical certification form related to those absences (Doc. 143 at 11-15 (citing e.g. 29 C.F.R. § 825.311(b)) and that it had an "honest suspicion" Miller was misusing FMLA leave.  (Id. at 15-18.)  The Court defers ruling on CSXT's motion for summary judgment on Miller's interference claim pending a hearing.

### 2.    Miller's Retaliation Claim

Assuming for purposes of considering defendants' motion for summary judgment, that Miller has established a *prima facie* case of discrimination for her lawful use of FMLA leave, she has adduced no evidence to counter CSXT's contention that Miller was disciplined based upon "CSXT's 'honest suspicion' that she had misused FMLA leave by taking leave when she was not approved," believing that its FMLA administrator first received Miller's medical certification in March 2005.  (Doc. 143 at 20.)  Miller cites to no evidence other than her own testimony that she "likely" mailed and also hand delivered the medical certification to an office supervisor before that date.  Miller has failed to meet her summary judgment burden of putting forth evidence that CSXT's proffered legitimate reason is pretext for

unlawful retaliation based upon her use of FMLA leave.[19]  Summary judgment on Miller's

retaliation claim is due to be granted in favor of CSXT.

### E.      Muzette Robinson (Count II: "Termination/Discipline under False Pretenses and Subterfuge")

Plaintiff Musette Robinson alleges her employer CSXT[20] violated her rights under the

FMLA when it imposed a 20-day suspension based upon the charge of marking off work

under false pretenses.[21]  Key to this claim is the undisputed fact that Robinson never served

a day of the suspension which was rescinded, and never lost any pay.  While the discipline

remains on Robinson's employment record, the parties agree that "[b]ecause three years

---

[19]   Miller's contention that CSXT failed to approve or deny the certification when it was presented by Miller's union representative at a hearing prior to CSXT's decision to terminate Miller is unavailing; the investigative hearing on the charge against Miller not was conducted until April 7, 2005.  (Docs. 143 at 8; 179 at 5,14.)

[20]  Defendants CSXI and CSXC are entitled to judgment as a matter of law on Robinson's claims because they were not Robinson's employer.  29 U.S.C. § 2611(4).

[21]   Robinson was disciplined for claiming FMLA leave to "mark-off" from assigned overtime shifts on May 11, 13, 15, 20, and 22, 2005.  CSXT cites to Robinson's April 2005 medical certification form in which her health care provider indicated Robinson would require intermittent FMLA leave for monthly doctor appointments for her serious health condition and that she was not presently incapacitated nor would she have episodes of incapacity.  (Docs. 145 at 4; 175 at 2; S-11.)  Robinson cites to the same April 2005 medical certification form in which the health care provider checks that it was necessary for Robinson to work intermittently as a result of her condition.  (Docs. 175 at 2; S-11.)  Robinson was approved for FMLA leave for "monthly follow-up office visits."  (Doc. 146-2 at 22 (Robinson Dep. Ex. 5.)  The parties thus dispute whether or not Robinson's absences were contemplated by her medical certification in effect at the time.  Robinson submitted a new medical certification form on June 7, 2005 in which her health care provider stated that Robinson would experience episodes of incapacity; "Pt. Currently having 3-4 episodes per month."  (Doc. S-11.)  Based on the later form, CSXT approved subsequent intermittent FMLA leave for episodes and doctor appointments.

have passed since August, 2005, this disciplinary action will not have an impact on any future discipline that CSXT may issue to Ms. Robinson." (Doc. 145 at 7; 175 at 3.) Robinson contends that she has suffered an "injury in fact." (Doc. 175 at 2.)

The FMLA provides relief only if the employee has been prejudiced by a violation of the statute. Demers v. Adams Homes of Northwest Fla., Inc., 321 F. App'x 847, 849 (11th Cir. 2009)(citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)). "The remedy is tailored to the harm suffered." Ragsdale, 535 U.S. at 89. Thus, even if there may have been a technical violation of the FMLA, "those violations are not compensable where, as here, a plaintiff has failed to demonstrate that he suffered any 'adverse employment action' for purposes of stating a prima facie case under the statute." Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006)(citing Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1284 (11th Cir. 1999)). Besides failing to show that she was subject to an adverse employment action, Robinson has not demonstrated she suffered any "actual monetary losses" as a result of CSXT's actions. 29 U.S.C. § 2617(a)(1)(A)(i)(II).

Additionally, equitable relief is not appropriate in the absence of an FMLA injury. Andrews v. CSX Transp., Inc., No. 3:06-cv-704-J-HTS, 2009 WL 5176462, at *2 n.6 (M.D. Fla. Dec. 22, 2009); Billups v. Tampa Sports Auth., No. 8:06-cv-1433-T-23TGW, 2007 WL 4093232, at *9 (M.D. Fla. Nov. 15, 2007)(citing Rodgers v. City of Des Moines, 435 F.3d 904, 909 (8th Cir. 2006)("[b]ecause [the plaintiff] suffered no prejudice, the FMLA provides no equitable relief")); see also 29 U.S.C. § 2617(a)(1)(B)(employer who violates FMLA shall be liable "for such equitable relief as may be appropriate, including employment,

reinstatement, and promotion").

Even if equitable relief were available in circumstances where plaintiff has suffered no monetary loss, Robinson has made no showing that the inclusion of the discipline report in her personnel record nearly five years ago has caused her any damages, and has conceded that after the passage of three years (ie. after August 2008), will not cause her any damages in the future.  See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)(where a plaintiff seeks prospective relief, he must demonstrate a "real and immediate threat" of future injury); Elend v. Basham, 471 F.3d 1199, 1207 (11th Cir. 2006); Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001).[22]  Summary judgment is due to be granted in favor of CSXT on Robinson's claims.

### F.  Kathy Warren (Count II: "Termination/Discipline under False Pretenses and Subterfuge")

Plaintiff Kathy Warren's employer CSXT[23] suspended Warren for five days in August 2006, based on its finding that Warren was absent from work under "false pretenses" during her regular shift on July 6, 2006.  The issue is whether she indeed "marked off" for FMLA leave on that date, and if so, whether she was using leave for FMLA's "intended purpose."

---

[22]  Because Robinson has not established that there are "blanket" or "wholesale" policies of CSXT which have been shown to violate the FMLA to the detriment of employees either now or in the future, this case is readily distinguishable from the case Harcourt v. Cincinnati Bell Tel. Co., 383 F. Supp. 2d 944 (S.D. Ohio 2005) cited by Robinson.

[23]  Defendants CSXI and CSXC are entitled to judgment as a matter of law on Warren's claims because they were not Warren's employer.  29 U.S.C. § 2611(4).

During the summer of 2006, Warren used both FMLA[24] and non-FMLA sick leave for absences.[25]  According to Warren, she requires FMLA leave for her health condition when it is aggravated by stressful situations.  (Doc. 176 at 2(citing Doc. 152-1 at 37 (Warren Dep. at 84).)

On June 5, 2006, Warren worked seven minutes of her shift and "marked off" "on-duty sick" leave (unpaid sick leave) for the remaining seven hours and 53 minutes, substantiating the leave with a doctor's note dated June 6.  (Docs. 151 at 4-5 (citing 152-1 at 13, 27 45 (Warren Dep. at 25, 44 & Ex. 7); S-13; 176 at 2.)

On June 6, 2006, Warren was scheduled to work a full shift, starting at 11:00 p.m. She was initially assigned to train another employee in the CSXT Operations Center, a job which Warren preferred because it was "a quiet job." (Docs. 151 at 5 (citing 152-1 at 18-20 (Warren Dep. at 34, 36, 37); 176 at 2 (citing Doc. 152-1 at 20 (Warren Dep. at 37).) Approximately 30 minutes into the shift, Warren received a call from a CSXT's Crew Management Center ("CMC") directing her to report to a different position (called "diverting") at the CMC for the remainder of her shift.  (Docs. 151 at 5 (citing Doc. 152-1 at 21-23

---

[24]   Warren had submitted a medical certification from her health care provider dated May 3, 2006 saying that Warren suffered from "fatigue, anemia, headaches, anxiety" one to two times per month, each episode lasting one to two days.  (Doc. S-13.)

[25]   In her brief, Warren admitted the defendants' statement of fact that "Ms. Warren used FMLA leave for her own serious health condition at various times, including on May 4, June 9, June 13, June 18, and June 22-23, 2006.  However, she also regularly used sick (non-FMLA) leave during that same period, including on May 15, May 25, June 5, June 6, June 7, and June 8, 2006."  (Doc, 151 at 4 (citing Docs. 152-1 at 29-31, 67; S-13 (Warren Dep. at 60, 68, 71 & Exs. 10, 23); 176 at 2.)

(Warren Dep. at 38-40); 176 at 2.)  CSXT recorded the telephone conversation on June 6, 2006 at 11:23 p.m.:

| | |
|---|---|
| Kathy[26]: | Hello? |
| Caller 1: | Yeah um Kathy. |
| Kathy: | Yes? |
| Caller 1: | Yeah, this is Nika admin, Kathy I'm going to have to divert you . . . |
| Kathy: | . . . Okay, well you just lay me off ODS ["on-duty sick"] |
| Caller 1: | Okay. |
| Kathy: | Okay. |
| Caller 1: | All right then bye. |

(Docs. 151 at 5; 176 at 2; 152-1 at 69-70 (Warren Dep. Ex. 10 at 3-4).)  Warren in her brief admits defendants' statement that "Ms. Warren immediately marked off 'on-duty sick,' not FMLA, at 11:30 p.m. on June 6, 2006," 30 minutes into her scheduled shift.  (Docs. 151 at 5 (citing Doc. 152-1 at 33, 45, 89 (Warren Dep. at 79 & Exs. 7, 27)); 176 at 3.)  Warren called the CMC administrative caller several minutes later at 11:30 p.m., to discuss the procedures used in determining the"diversion," but again, Warren did not mention FMLA leave.  (Docs. 151 at 6 (citing Docs. 152-1 at 24-25, 70-72 (Warren Dep. at 41-42 & Ex. 10 at 4-6); 176 at 3.)  Warren was absent from work on June 7 and 8 on non-FMLA sick leave, and on June 9 on FMLA leave.  (Docs. 151 at 6; 152-1 at 55; 176 at 2-3.)

On June 20, 2006, CSXT charged Warren under her collective bargaining agreement with marking off "on-duty sick" under "false pretenses on June 6, 2006 after she was diverted

---

[26]  "Kathy" is plaintiff Kathy Warren; "Caller 1" is CMC administrative caller Nika Green. (Docs. 151 at 5; 176 at 2.)

from a position in the Operations Center to a different position in the CMC." (Docs. 151 at

6 (citing Doc. 152-1 at 16, 66 (Warren Dep. at 28 & Ex. 8); 176 at 3.)

CSXT conducted a disciplinary investigation into the false pretenses charge against

Warren on July 20, 2006, which Warren attended with union representation. (Docs. 151 at

6 (citing Doc. 152-1 at 17-18, 67 (Warren Dep. at 33-34 & Ex. 10); 176 at 3.)  Notably, while

aware that the discipline concerned her use of "on-duty sick" leave on June 6, 2006, neither

Warren or her representative ever stated in the investigative hearing that she was using

FMLA leave on June 6, 2006.(Doc. 152-1 at 67, 69, 72-73, 75, 78-79 (Warren Dep. Ex. 10

at 1, 3, 6-7, 9, 12-13).)

On August 7, 2006, CSXT found Warren guilty of marking off "on duty sick" under

false pretenses, and suspended Warren for five days.  (Doc. 152-1 at 82 (Warren Dep. Ex.

12).)

In her December 10, 2008 deposition, Warren contended for the first time that at

some point on June 6, 2006, she called into a CMC crew dispatcher to mark off FMLA.

(Docs. 151 at 7 (citing Doc. 152-1 at 34-36 (Warren Dep. at 80-82); 176 at 3.)

Acknowledging that her employment records do not reflect that she ever sought FMLA leave

for June 6, 2006, Warren stated: "It should be but . . because I know that I did, but . . . it's

not here."  Warren does not know with whom she spoke, only that

> I'm sure I told them when I was marking off on duty sick to mark
> me off FMLA

(Doc. 152-1 at 34 (Warren Dep. at 80).)  As to the telephone call recording transcripts,

Warren said "they record what they want to record . . . .  They put on the transcripts what they want to put on the transcripts." (Id. at 35 (Warren Dep. at 81.)  Warren acknowledged that she did not raise FMLA at her investigative hearing.  (Id. at 34-35 (Warren Dep. at 80-81).)

CSXT argues that it is entitled to summary judgment on both Warren's interference and retaliation claims because 1) Warren did not take FMLA leave on June 6, 2006 and thus her absence is not protected by the FMLA; 2) even if Warren did take FMLA leave on June 6, CSXT had an "honest suspicion" that she was not taking FMLA leave for its intended purpose but that she took leave to avoid working a position she found less desirable; and 3) as to her retaliation claim, Warren has failed to adduce any evidence of pretext to overcome CSXT's proffered reason for the discipline.  Warren argues that she met the "notice standard" for FMLA leave, indicating "during her telephone conversation with the admin caller that she needed to be marked off sick on June 6, 2006." (Doc. 176 at 4.)  Warren contends that "[a]ll that she was required to do under the statute is to indicate a need for leave in circumstances where the employer is already aware of an employee's medical or family history." (Id.)  At minimum, argues Warren, the evidence creates an issue of fact.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Not any factual dispute will defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." Scott v. Harris, 550 U.S. 372, 380

34

(2007)(emphasis in original).  An issue is "genuine" if "a reasonable trier of fact could return judgment for the non-moving party." <u>Miccosukee Tribe of Indians of Fla. v. U.S.</u>, 516 F.3d 1235, 1243 (11th Cir. 2008).  As noted by the United States Supreme Court:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380 (emphasis in original).[27]  The Court draws reasonable inferences of the evidence in favor of the non-moving party only "'to the extent supportable by the record.'"  <u>Penley v. Eslinger</u>, 605 F.3d 843, 848 (11th Cir. 2010)(citing <u>Scott</u>, 550 U.S. at 381 n.8)).

---

[27]     In <u>Scott</u>, the Supreme Court found that a videotape of a motorist's encounter with police officers - a high-speed car chase which concluded with the police officer ramming the motorist's car - so contradicted the motorist's version of events in his civil rights case alleging excessive force, that the court could not rely upon the motorist's version of events in ruling on defendants' motion for summary judgment.  550 U.S. at 378-81.

"[A] mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment." Kesinger v. Herrington, 381 F.3d 1243, 1247, 1249-50 (11th Cir. 2004)(rejecting the only testimony favorable to the plaintiff because the testimony was in direct conflict with the record and was inconsistent with the witness' initial written statements).

The undisputed evidence is that Warren told the administrative caller on June 6 to "just lay me off ODS" and nothing more. In addition, Warren had taken non-FMLA sick leave on June 5, 7 and 8, the days before and after the day in question, as well as on other days within the month.  Warren's vague assertion two years after the fact that she requested FMLA leave on June 6 directly contradicts two recordings of telephone conversations on June 6, 2006 in which Warren requested "ODS" ("on-duty sick" leave) and the transcript of an investigative hearing held on July 20, 2006 concerning CSXT's charge arising out of Warren's use of "on-duty sick" leave on June 6.  Warren's request for non-FMLA sick leave on June 6 is further corroborated by detailed CSXT personnel records, which reflect that Warren took advantage of both FMLA and non-FMLA leave during this time frame.  Nothing in the record creates an inference that Warren requested FMLA leave on June 6, 2006.  Her uncorroborated testimony, which is devoid of detail and certainty is so "utterly discredited" by the evidence in the record such "that no reasonable jury could have believed [her]." Scott, 550 U.S. at 380.  Further, especially given the undisputed fact that Warren used FMLA and non-FMLA leave interchangeably, nothing in this record supports Warren's argument that her request for "ODS" would have put CSXT on notice that she had a need to take FMLA

36

leave on June 6, 2006.  Because Warren was not exercising her right to FMLA-protected leave on June 6, 2006, summary judgment is due to be entered in favor of CSXT on all of her claims.  E.g. Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000)(to state a claim under the FMLA, a plaintiff must prove "she availed herself of a protected right").

Upon due consideration, it is hereby

**ORDERED**:

1.      Plaintiffs Juliet Christie, Harold Fisher, Rodney Puckett, and Lettie McClain, and Defendants shall file a joint motion for dismissal or other appropriate documents by **August 31, 2010** to close out these plaintiffs' claims which have been settled.

2.      The claims brought in Complaint "A" by plaintiffs James Adams, Anita Humphrey (in Count I) and Charisse Bell are **DISMISSED WITH PREJUDICE** with each party to bear its own fees and costs.  (See Docs. 126, 165, 166.)

3.      Plaintiffs Tammy Howard, Jennifer Saul, and Tracey Thompson's Motions For Dismissal Pursuant To F.R.C.P. 41(a)(2) (Docs. 180, 181,182) are **GRANTED**.  Plaintiffs Tammy Howard, Jennifer Saul, and Tracey Thompson's claims brought in Complaint "A" against all defendants are **DISMISSED WITH PREJUDICE**, with plaintiffs to pay defendants recoverable costs.  Fed. R. Civ. P. 54(d).  Defendants must file a motion to tax costs no later than **August 31, 2010**.

4.      Defendants' Motion For Sanctions Against Plaintiff Jennifer Saul And Her Counsel Gregory G. Paul Pursuant To Fed. R. Civ. P. 11 And 28 U.S.C. § 1927 (Doc. 186)

37

is **DEFERRED**, to be discussed at the upcoming hearing.                              .

5.    Defendants' Motion For Summary Judgment On The Claims Of Plaintiff Michael Andrews In Second Amended Complaint "A" (Doc. 129) is **GRANTED** to the extent that Andrews' claims brought in Complaint "A" against defendants CSX Transportation, Inc. and CSX Corporation are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction, and **GRANTED** as to Andrews' claims against CSX Intermodal, Inc. brought in Complaint "A."

6.    Defendants' Motion For Summary Judgment On The Claim Of Plaintiff Marcie Hoerig In Second Amended Complaint "A" (Doc. 135) is **GRANTED** to the extent that Hoerig's claims brought in Complaint "A" against defendants CSX Intermodal, Inc. and CSX Corporation are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction; **GRANTED** as to Hoerig's claim of retaliation under the Family Medical Leave Act against defendant CSX Transportation, Inc.; and **DEFERRED** as to Hoerig's claim of interference against CSX Transportation, Inc. brought in Complaint"A."  A hearing will be scheduled on Hoerig's interference claim.

7.    Defendants' Motion For Summary Judgment On The Claims Of Plaintiff Anita Humphrey In Second Amended Complaint "A" (Doc. 139) is **GRANTED** to the extent that Humphrey's claims brought in Complaint "A" against defendants CSX Intermodal, Inc. and CSX Corporation are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction; **GRANTED** as to Humphrey's claim of retaliation under the Family Medical Leave Act against

defendant CSX Transportation, Inc.; and **DEFERRED** as to Humphrey's claim of interference against CSX Transportation, Inc. brought in Complaint"A."  A hearing will be scheduled on Humphrey's interference claim.

8.     Defendants' Motion For Summary Judgment On The Claim Of Plaintiff Deanna Miller In Second Amended Complaint "A" (Doc. 143) is **GRANTED** to the extent that Miller's claims brought in Complaint "A" against defendants CSX Intermodal, Inc. and CSX Corporation are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction; **GRANTED** as to Miller's claim of retaliation under the Family Medical Leave Act against defendant CSX Transportation, Inc. and **DEFERRED** as to Miller's claim of interference against CSX Transportation, Inc. brought in Complaint"A."  A hearing will be scheduled on Miller's interference claim.

9.     Defendants' Motion For Summary Judgment On The Claims Of Plaintiff Muzette Robinson In Second Amended Complaint "A" (Doc. 145) is **GRANTED** to the extent that Robinson's claims brought in Complaint "A" against defendants CSX Intermodal, Inc. and CSX Corporation are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction; and **GRANTED** as to all claims brought by Robinson in Complaint "A" against CSX Transportation, Inc.

10.    Defendants' Motion For Summary Judgment On The Claim Of Plaintiff Kathy Warren In Second Amended Complaint "A" (Doc. 151) is **GRANTED** to the extent that Warren's claims brought in Complaint "A" against defendants CSX Intermodal, Inc. and CSX

Corporation are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction; and **GRANTED** as to all claims brought by Warren in Complaint "A" against CSX Transportation, Inc.

11.     This case is set for **HEARING** on **November 15, 2010** at **2:00 p.m.** before the undersigned, in Courtroom 10D, Tenth Floor, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida[28] on the following pending matters:

> A.      Defendants' Motion For Sanctions Against Plaintiff Jennifer Saul And Her Counsel Gregory G. Paul Pursuant To Fed. R. Civ. P. 11 And 28 U.S.C. § 1927 (Doc. 186);
>
> B.      Defendants' Motion For Summary Judgment On The Claim Of Plaintiff Marcie Hoerig In Second Amended Complaint (Doc. 135) as to Hoerig's claim of interference against CSX Transportation, Inc. brought in Complaint "A";
>
> C.      Defendants' Motion For Summary Judgment On The Claims Of Plaintiff Anita Humphrey In Second Amended Complaint (Doc. 139) as to Humphrey's claim of interference against CSX Transportation, Inc.

---

[28]   Photo identification must be presented to court security officers upon request. Although cell phones and laptop computers are generally not permitted in the Courthouse, counsel will be permitted to bring those items into the Courthouse for purposes of this hearing by presenting a copy of this Order to Court Security Officers. All cell phones must remain off while Court is in session. Counsel may also store such items in the first floor lockers provided by the Federal Bar Association. Locker access is available upon presentation to Court security Officers of a Florida Bar card or Order of special admission <u>pro hac vice</u>.

brought in Complaint "A";

D.     Defendants' Motion For Summary Judgment On The Claim Of Plaintiff Deanna Miller In Second Amended Complaint (Doc. 143) as to her claim of interference against CSX Transportation, Inc. brought in Complaint "A";

E.     The **STATUS** of plaintiff Billy Knowles' claims.

12.     The Clerk should withhold entry of judgment until further order of the Court.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of August, 2010.

_____
TIMOTHY J. CORRIGAN
United States District Judge

jl.

Copies to:

Counsel of Record