UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


Deanna Miller Cheetham,                                    Case No. 3:06-cv-704

                        Plaintiff,

v.                                                    **MEMORANDUM AND ORDER**


CSX Transportation, Inc.,

                        Defendant.
_____

        This matter is before the Court on four post-trial Motions: Plaintiff's Motion to Alter

or Amend the Judgment (Docket No. 264), Plaintiff's Motion for Attorney's Fees (Docket

No. 266), Defendant's Renewed Motion for Judgment as a Matter of Law (Docket No. 292),

and Defendant's Motion for a New Trial or to Alter or Amend the Judgment (Docket No.

293).  For the reasons that follow, Plaintiff's Motion for Attorney's Fees is granted in part

and denied in part, Defendant's Motion for a New Trial or to Alter or Amend the Judgment

is granted in part and denied in part, and the remaining Motions are denied.

**BACKGROUND**

        Plaintiff Deanna Miller Cheetham contended in this lawsuit that she was fired from

her job with Defendant CSX Transportation, Inc., for her use of leave under the Family

Medical Leave Act ("FMLA").  After a jury trial, the jury agreed that CSX impermissibly

interfered with Cheetham's rights under the FMLA, and awarded Cheetham $225,100.00 in

damages.  The parties filed timely motions regarding the verdict and the imposition of

attorney's fees and costs, and these matters are now fully briefed and properly before the Court.

**DISCUSSION**

Because granting either of CSX's Motions would make a ruling on Cheetham's Motions unnecessary, the Court will address CSX's Motions first.

**A.    CSX's Motion for Judgment as a Matter of Law**

To resolve a Rule 50(b) motion for judgment as a matter of law, the Court must determine "whether the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her own position as a matter of law." Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006) (internal quotation marks omitted). A Rule 50(b) motion must be denied unless there is no "legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party on that issue." Cleveland v. Home Shopping Network, 369 F.3d 1189, 1192 (11th Cir. 2004). In making this determination, the Court considers all the evidence adduced at trial and grants all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Williams v. City of Valdosta, 689 F.2d 964, 969 (11th Cir. 1982).

Although the Court may not simply credit the jury's verdict or rely solely on the jury's factual findings, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Cleveland, 369 F.3d at 1193. Thus, "[i]t is improper to grant a judgment as a matter of law if 'the evidence is such that 'reasonable and fairminded [jurors] in the exercise of impartial

2

judgment might reach different conclusions.'" <u>MacPherson v. Univ. of Montevallo</u>, 922 F.2d 766, 770 (11th Cir. 1991) (quoting <u>Verbraeken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989)).  The Court may not simply "substitute [its] judgment for that of the jury." <u>Rosenfield v. Wellington Leisure Prods., Inc.</u>, 827 F.2d 1493, 1498 (11th Cir. 1987).

Granting a Rule 50(b) motion is therefore proper only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." <u>Williams</u>, 689 F.2d at 970.  In other words, to grant a motion for judgment as a matter of law on an issue on which the movant had the burden of proof at trial, "the evidence . . . must be so one-sided as to be of over-whelming effect." <u>Grey v. First Nat'l Bank</u>, 393 F.2d 371, 380 (5th Cir. 1968).[1]  As a result of this heavy burden, the Eleventh Circuit has characterized granting judgment as a matter of law in favor of a party having the burden of proof as an "extreme step." <u>EEOC v. Massey Yardley Chrysler Plymouth, Inc.</u>, 117 F.3d 1244, 1250 (11th Cir. 1997).

CSX contends that judgment as a matter of law in its favor is appropriate because no reasonable jury could have found that CSX did not honestly believe that it was terminating Cheetham for misusing FMLA leave.  In Jury Instruction 10, the Court instructed the jury as follows: "If you find by a preponderance of the evidence that Defendant honestly believed that it was discharging Plaintiff for misusing the FMLA, even if Defendant was mistaken as

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to whether Plaintiff was misusing the FMLA, then Defendant is not liable and your verdict must be for Defendant."  (Final Jury Instr. at 12 (Docket No. 252).)  The Special Verdict Form asked the jury, "Do you find by a preponderance of the evidence . . . [t]hat CSX honestly believed that Plaintiff was misusing FMLA leave to avoid working and possible disciplinary action?"  (Special Verdict Form at 2 (Docket No. 260).)  The jury answered "No" to this question.  (Id.)  Thus, in the eyes of the jury, CSX did not carry its burden on the honest-belief defense.

CSX argues that this determination is contrary to the unrefuted evidence at trial, pointing primarily to the testimony of CSX Assistant Vice President Tim Male, who made the final decision to terminate Cheetham's employment.  According to this testimony, Mr. Male was unaware that Cheetham claimed to have mailed a medical certification form to CSX in December 2004.  CSX contends that Male's testimony establishes CSX's honest-belief defense.  CSX also argues that no reasonable jury could have found that Cheetham did in fact mail a medical certification form to CSX in December 2004.  Absent any evidence of Cheetham providing this form to CSX prior to March 2005, CSX contends that the only conclusion the jury could draw was that CSX honestly believed that Cheetham had failed to provide the required medical certification and thus that she had misused FMLA leave.

CSX's argument ignores two important points.  First, the jury's view of Male's testimony is a credibility determination.  The jury chose not to credit Male's testimony, and that determination is the exclusive province of the jury.  Second, there was sufficient evidence put forward at trial that could have led the jury to its conclusion on the honest-belief

4

defense. Cheetham testified unequivocally that she not only mailed the medical certification form to CSX in December 2004 (Tr. Vol. II at 73, 75), but she also handed that form to Linda Ballentine of CSX in January 2005 (id. at 79), well within CSX's 45-day time limit for the submission of the form. If the jury chose to credit Cheetham's testimony over that of Male, it is not for the Court to determine otherwise. Moreover, Ballentine testified that she did not "think" that Cheetham ever gave her the medical certification form (id. at 173),[2] and there was other testimony regarding issues in CSX's FMLA office during this time because of the transition of FMLA administration from CSX's medical department to the labor relations department, the lack of a full complement of staff in the department, and a computer system that was inadequate to track FMLA leave. (Id. Vol. I at 101, 103-05, 114-16 (testimony of Andrea Mateer).) Thus, it was both possible and reasonable for the jury to have concluded that CSX did in fact receive the form within the time required.

In addition, the relevant question is not whether only Male had an honest belief that Cheetham did not timely submit the required medical certification, but whether CSX as an entity had an honest belief. If the jury determined that CSX as an entity received Cheetham's form either in December or January, the jury could properly find that CSX did not therefore have an honest belief that Cheetham was misusing FMLA leave.

CSX next argues that a plaintiff seeking to invoke the "mailbox rule" must provide

---

[2] Later in her testimony, Ballentine contended that she knew she did not receive the certification form because, if she had, she immediately would have faxed that form to the FMLA administration department. (Tr. Vol. II at 178.)

some independent proof of mailing other than her own testimony. (Def.'s Mem. Supp. Mot. J. as Matter of L. at 21 (Docket No. 292).) According to CSX, failure to provide independent evidence regarding mailing means that the Court must find as a matter of law that Cheetham did not mail the certification form. (Id. (citing Myers v. Dolgencorp, Inc., No. 04-4137, 2006 WL 408242, at *7 (D. Kan. Feb. 15, 2006)).) Notwithstanding the lack of value an unpublished decision from the District of Kansas has here, Myers is simply not on point, and CSX cites no cases from this jurisdiction or from any court in the Eleventh Circuit for this proposition. The question of the mailbox rule was before the Myers court on a motion for summary judgment, not a trial. In this case, the evidence before the jury was Cheetham's live testimony, not a deposition or affidavit. The jury believed Cheetham, not CSX, and the Court cannot say that this conclusion is unreasonable. The evidence regarding mailing was not so "one-sided" as to be overwhelming. Grey, 393 F.2d at 380. CSX's Motion for Judgment as a Matter of Law fails.

**B.    CSX's Motion for New Trial**

CSX contends that the jury instructions and special verdict form were erroneous and entitle CSX to a new trial under Rule 59 of the Federal Rules of Civil Procedure. CSX also asks for a new trial on damages or, in the alternative, a remittitur of the damages the jury awarded to Cheetham.[3]

---

[3] CSX also argues that the clear weight of the evidence establishes CSX's honest-belief defense and requires a finding that Cheetham did not provide the medical certification to CSX as she claimed. For the reasons discussed above with respect to CSX's Motion for Judgment as a Matter of Law, however, the Court finds that the jury's verdict on the honest-

Rule 59 provides that, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  Because a motion for a new trial is committed to the sound discretion of the trial court, the standard is more lenient than in a motion for judgment as a matter of law.  See United States ex rel. Weyerhaeuser Co. v. Bucon Constr. Co., 430 F.2d 420, 423 (5th Cir. 1970).  Indeed, the trial court may grant a motion for a new trial if, in the court's opinion, "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  Id. (internal quotation marks omitted).  However, the court should give great deference to the jury's verdict and grant a new trial sparingly.  U.S. Phillips Corp. v. Windmere Corp., No. 84-cv-2508, 1991 WL 338258, at *2 (S.D. Fla. Sept. 3, 1991).

    1.   Jury instructions and special verdict form

A challenge to jury instructions will fail unless "the jury instructions, taken as a whole, are erroneous and prejudicial."  Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters of N. Am., Inc., 356 F. App'x 221, 227 (11th Cir. 2009).  As long as the jury instructions "accurately reflect the law," the Court has broad discretion in fashioning instructions.  Id. at 226.  Indeed, a motion for a new trial based on ostensibly erroneous instructions will fail unless there is "a substantial and ineradicable doubt as to whether the

---

belief defense, and its acceptance of Cheetham's claim to have provided the certification to CSX in December and January, were not contrary to the clear weight of the evidence.

jury was properly guided in its deliberations." Johnson v. Bryant, 671 F.2d 1276, 1280 (11th Cir. 1982) (citation omitted).

CSX's challenges to the jury instructions and the special verdict form are inextricably intertwined. Thus, the following discussion will focus on the errors of law CSX contends the Court made, rather than on CSX's complaints about the jury instructions and verdict form separately.

a.    Notice

CSX contends that the Court's instructions and the special verdict form impermissibly combined two distinct elements of Cheetham's FMLA claim: whether she gave CSX notice of the need for FMLA leave and whether she timely returned a medical certification form to CSX. According to CSX, these elements are separate and distinct and to combine them confused the jury about Cheetham's burden in this case.

Both the Court's instructions and the verdict form tracked the language of the Eleventh Circuit Pattern Civil Jury Instructions on FMLA claims. The pattern instructions describe Cheetham's burden almost exactly as the Court's instructions did and the Court's verdict form is a near-verbatim recital of the Eleventh Circuit's recommended verdict form. There is no mention in either the pattern instructions or any Eleventh Circuit caselaw that the Court must separate elements of a plaintiff's FMLA claim in the manner CSX suggests. Moreover, CSX'x claim that the Court "buried" a reference to Cheetham's burden to provide notice at the end of an instruction on a different issue is patently untrue. (Def.'s Mem. Supp. Mot. New Trial at 12.)  The Court's instructions are separated by topic, and no instruction

8

is much more than a single page in length.  Further, the jurors each had a copy of the Court's instructions in the jury room.  No important reference was "buried."

The Court's instructions and verdict form adequately set forth the relevant law on Cheetham's burden under the FMLA.  CSX's contentions to the contrary are without merit.

        b.      <u>Serious health condition</u>

Next, CSX contends that the instructions and verdict form failed to make clear that Cheetham needed to establish that her absences from work were because of her serious health condition.  CSX offers no support in the caselaw for the proposition that the Court must instruct the jury on something that is almost self-evident: to take FMLA leave, the employee must be suffering from a serious health condition and that condition must necessitate her absence from her job.  As noted, the Court's instructions and the verdict form closely tracked the language of the Eleventh Circuit patterns.  Those patterns do not set forth this supposed "requirement," likely because to do so would be repetitive and an insult to the jurors' intelligence.  CSX's objection on this point is without merit.

        c.      <u>Whether leave was protected by FMLA</u>

Similarly, CSX argues that instruction 7 and question 5 gave the jury the mistaken impression that if Cheetham's mere absence from work, whether or not protected by the FMLA, caused CSX to fire her, then Cheetham had established that her use of FMLA leave was the but-for cause of her termination.  But the instruction clearly states that Cheetham must prove that she was fired "because of her use of FMLA leave."  (Final Jury Instr. at 9 (Docket No. 252).)  Thus, the instructions were clear that the leave in question must be

FMLA leave, not other types of leave.  CSX's argument fails.

        d.    <u>Honest belief</u>

CSX complains that the Court's honest belief instruction and question were too "generic" in the context of the case.  (Def.'s Mem. Supp. Mot. New Trial at 16.)  CSX states that the Court should have reflected a more complicated factual scenario: that CSX's "honest belief that Ms. Cheetham was misusing FMLA leave was predicated on its belief that her absences were not protected by the FMLA in the first place because it honestly believed that she had failed to timely return an FMLA medical certification form." (<u>Id.</u>)  In light of the amount of evidence and argument about the timely return of the FMLA certification form, however, there was no need to beat the already-dead horse by inserting CSX's chosen language into either the instructions or the verdict form.  Indeed, CSX's preferred instruction is hardly a model of clarity, and the likelihood that the jury would have been confused by the lengthy and complex explanation CSX proffers is high indeed.

The Court's instruction and question about honest belief accurately reflect the law.  CSX's objection to the same is denied.

        e.    <u>Instruction regarding elements of claim</u>

CSX takes issue with instruction 6, which set forth the elements of Cheetham's FMLA claim.  According to CSX, the instruction is flawed because it did not reference Cheetham's burden to establish that she timely returned to CSX the required FMLA certification form.  But instruction 6 stated that Cheetham must prove that she gave CSX "the proper 'notice' of the need to be absent from work, as hereafter defined."  (Final Jury Instr. at 8.)  The

10

instructions then defined notice to include that Cheetham "provide medical certification to [CSX] within 45 days of receiving the certification pursuant to CSX policy." (Id. at 10.) Thus, the jury could not find that Cheetham proved her FMLA claim without finding that she timely returned the required certification form to CSX. Instruction 6 correctly states the law and is not erroneous.

        f.   <u>Damages</u>

Finally, CSX contends that the Court's instruction on damages was flawed, as evidenced by the jury's verdict, which was greater than the amount Cheetham claimed in damages. According to CSX, the instruction should have more specifically instructed the jury as to Cheetham's duty to mitigate and as to the stipulated periods of time when she was unable to work. (See Def.'s Mem. Supp. Mot. New Trial at 18-19 (citing <u>Serricchio v. Wachovia Sec. LLC</u>, 606 F. Supp. 2d 256, 262 n.3 (D. Conn. 2009), for "appropriate jury instruction" on this issue "that was approved by the Second Circuit as an accurate statement of the law").)

The parties argued to the jury regarding damages, including Cheetham's duty to mitigate and the times when it was stipulated that Cheetham could not work. (See, e.g., Tr. Vol. I at 24 (Pl.'s Opening Statement) ("We're asking for damages that begin in 2006 after she had recovered . . . ."); <u>id.</u> Vol. III at 69-72 (Pl.'s Closing Argument) (discussing elements of Cheetham's damages, including time limitations and mitigation); <u>id.</u> at 90-95 (Def.'s Closing Argument) (discussing damages, including time limitations and mitigation).) The damages instruction clearly stated that Cheetham could recover only what she "would have

earned in her employment with [CSX] if she had not been discharged." (Final Jury Instr. at 13.) This statement, combined with the evidence before the jury that Cheetham was unable to work for long stretches after she was fired, instructed the jury appropriately. That the jury determined that Cheetham was entitled to more money than she requested is not evidence that the damages instruction was flawed, and Cheetham points to no case stating as such.

Further, the Court's instruction on mitigation was not only an almost word-for-word recitation of the Eleventh Circuit pattern instruction, it was an accurate reflection of the evidence presented. That courts in the Second Circuit might use a different mitigation instruction is simply not relevant. The Eleventh Circuit has set forth its preferred instruction on mitigation of damages, and the Court used that instruction. To do so was not erroneous.

g.    Conclusion

CSX has failed to show that the Court's instructions and special verdict form were "erroneous and prejudicial" or that they failed to "accurately reflect the law." Specialized Transp., 356 F. App'x at 226-27. The jury was properly guided in its deliberations, and CSX's Motion for a New Trial because of alleged errors in the instructions and verdict form fails.

2.    Remittitur

In the alternative, CSX contends that it is entitled to a new trial on the issue of damages or to a remittitur of damages. Cheetham requested that the jury award her slightly more than $199,000 in lost wages, salary, employment benefits, and other compensation. The jury awarded Cheetham $225,100, or approximately $26,000 more than she requested.

12

CSX asks the Court to grant CSX a new trial on the damages issue unless Cheetham remits

$187,960.24 of the damages awarded.  See Griffin v. City of Opa-Locka, 261 F.3d 1295,

1315 (11th Cir. 2001) (discussing standards for remittitur).  CSX claims that $37,139.76 is

"the maximum amount that could even possibly be supported by the evidence in the record."

(Def.'s Mem. Supp. Mot. New Trial at 24.)  CSX bases this amount, in part, on the fact that

Cheetham has been attending college since August 2008, and was ostensibly unable to work

during that time.

It was the jury's province, however, to determine whether Cheetham had adequately

mitigated her damages, and the jury was instructed as such.  The fact that the jury gave

Cheetham more than the full amount she requested indicates that the jury did not agree with

CSX's arguments regarding Cheetham's failure to mitigate.

It is, however, the Court's province to determine whether the compensatory damages

award was excessive in light of the evidence presented.  Goldstein v. Manhattan Indus., Inc.,

758 F.2d 1435, 1447-48 (11th Cir. 1985).  If the award "is so excessive as to shock the

conscience of the court," a new trial on damages is necessary.  Id. at 1447 (citing Thompson

v. Nat'l R.R. Passenger Corp., 621 F.2d 814, 827 (6th Cir. 1980)).  If, however, the award

is not grossly excessive, a remittitur rather than a new trial is sufficient.  Id. at 1448.

Here, the damages the jury awarded are not grossly excessive in light of the evidence

presented at trial and Cheetham's requested damages.  The damages are, however, greater

than Cheetham's requested amount and thus it appears as though the jury may have been

swayed by sympathy or prejudice to award more than Cheetham requested.  A remittitur in

this situation is appropriate, and the Court will reduce Cheetham's damages to the amount she requested: $199,056.

**C.    Cheetham's Motion to Alter or Amend the Judgment**

Cheetham asks the Court to alter or amend the judgment under Rule 59(e) to award her liquidated damages. She also requests injunctive relief in the form of reinstatement, or in the alternative to reinstatement, to award her front pay until the age of 65.

1.    <u>Liquidated damages</u>

"Liquidated damages are awarded presumptively to an employee when an employer violates the FMLA, unless the employer demonstrates that its violation was in good faith and that it had a reasonable basis for believing that its conduct was not in violation of the FMLA." <u>Cooper v. Fulton Cnty.</u>, 458 F.3d 1282, 1287 (11th Cir. 2006). The decision to award liquidated damages is committed to the discretion of the district court. <u>Id.</u>

In this case, the jury determined that Cheetham had complied with the certification requirements of the FMLA. Cheetham's argument with respect to liquidated damages essentially amounts to the following: because the jury found that she complied with the certification requirements, it was unreasonable and a lack of good faith for CSX to have determined otherwise. But the evidence at trial regarding Cheetham's compliance with CSX's policy on medical certification was more ambiguous than Cheetham acknowledges.

Moreover, it is possible that Cheetham did comply with CSX's certification requirements but CSX in good faith did not believe that she did. The evidence established that the only medical certificate in CSX's file for Cheetham was a form faxed to CSX's

14

FMLA department on March 8, 2005, well after the time had expired for Cheetham to submit the required certification. CSX held a hearing at which Cheetham could have presented her argument that she submitted the form in December 2004 and/or January 2005, but Cheetham did not appear at this hearing or participate in it in any way. Thus, unlike the jury who had the benefit of Cheetham's testimony on the subject, the only evidence before the CSX decisionmaker at the time of the hearing was a facially untimely form. It was not a lack of good faith, nor was it unreasonable, for the decisionmaker to conclude that the evidence established that Cheetham had violated CSX policies on FMLA leave. Cheetham is not entitled to an award of liquidated damages.

### 2.  Reinstatement or front pay

The FMLA allows the Court to order "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1). Equitable relief may include front pay. EEOC v. W & O, Inc., 213 F.3d 600, 618 (11th Cir. 2000). If reinstatement is not available, front pay may be awarded if the Court finds that it is "necessary to make plaintiff whole, i.e., to restore [her] to the economic position [s]he would have occupied but for the illegal conduct by defendant." Quitto v. Bay Colony Golf Club, Inc., No. 2:06-cv-286, 2007 WL 4098847, at * 3 (M.D. Fla. Nov. 15, 2007) (Steele, J.).

The Court finds Cheetham's request for reinstatement curious. Cheetham has moved nearly 700 miles from Jacksonville, yet Jacksonville is the only city in which Cheetham could perform her previous job for CSX. Cheetham has also nearly completed a bachelor's degree in a different field at a college in West Virginia, where she now lives. The Court thus

doubts the sincerity of her desire not only to leave her husband in West Virginia to return to Jacksonville, but also to abandon her studies with less than a year to go.  She testified that she was fully committed to her newly chosen field of computer science, characterizing her college attendance as "full-time plus."  (Tr. Vol. II at 94.)  Her new claim that she is willing to forego the benefits of a degree to return to a job that, according to the record, she found less than satisfactory, is questionable.

In addition, it is not feasible for her to return to her previous position.  She was terminated more than six years ago.  To allow her to displace someone who may have been working for six years is simply not equitable, especially in light of the fact that Cheetham herself appears not to be interested in the field any longer.  The Court will not order CSX to reinstate Cheetham to her previous position.

Nor is an award of front pay appropriate in this situation.  There is no evidence in the record that Cheetham's economic situation is any worse than it would have been had CSX not terminated her.  She found a comparable job once she was able to work again after she was fired, but quit that job to move to West Virginia with her husband.  While it is true that she should not be penalized for this reasonable decision regarding her personal life, neither should CSX be penalized for that decision.  It is Cheetham's burden to establish that her economic circumstances are due to CSX's conduct, and she has failed to do so.  Her request for front pay is denied.

**D.**    **Cheetham's Motion for Attorney's Fees and Costs**

The FMLA makes the awarding of attorney's fees and costs to a prevailing plaintiff

mandatory.  29 U.S.C. § 2917(a)(3).  The statute provides that a prevailing plaintiff "shall"

recover "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the

action to be paid by defendant."  Id.  Here, CSX does not dispute that Cheetham is entitled

to recover some attorney's fees and litigation costs, but CSX contends that the amounts

Cheetham has requested are unreasonable and that some of her requested costs and fees are

non-compensable.

Cheetham's Motion requested fees in the amount of $110,577.50 and costs of

$12,468.14.  As CSX points out, however, her reply memorandum only attaches receipts for

costs in the amount of $7,533.77.  Thus, it appears that Cheetham has adjusted her requested

costs.  In addition, CSX noted in its opposition that Cheetham's requested attorney's fees for

several depositions should be reduced from 18.5 hours to 4.15 hours, and Cheetham's reply

memorandum does not refute CSX's argument with respect to these fees.  Cheetham

therefore appears to concede that the requested hours for attorney Greg Paul should be

reduced by 14.35 hours.[4]  With these adjustments, the total amount Cheetham requests for

costs and attorney's fees is $113,088.77.[5]

---

[4]   Cheetham  did  not  provide  a  breakdown  of  the  hours  worked  per  attorney.
According to the timesheet attached to her Motion (Docket No. 267-4), Mr. Paul worked a
total of 274.9 hours, which at the rate of $350 per hour would yield a total fee of $96,215.00.
But Cheetham requested $95,965 for Mr. Paul's services.  (Pl.'s Mem. Supp. Mot. Att'y's
Fees at 17 (Docket No. 267).)  She does not explain this discrepancy, and the Court has used
her total request for Mr. Paul in the calculations in this paragraph.

[5] This amount equals the initially requested fees ($110,577.50), minus 14.35 hours for
Mr. Paul at $350 per hour ($5022.50), plus the revised cost amount ($7,533.77).

1.    <u>Fees</u>

To calculate a "reasonable attorney's fee" under the FMLA, the Court must multiply "the number of hours reasonably expended on the litigation [by] a reasonable hourly rate." <u>Blum v. Stevenson</u>, 465 U.S. 886, 888 (1984).  This amount is called the "lodestar," which is itself adjustable depending on the results obtained in the litigation.  <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994).  Here, the parties dispute whether Mr. Paul is entitled to the hourly rate he requests, $350, and whether the lodestar should be adjusted based on the alleged complexity of the litigation and the results counsel obtained for Cheetham.  CSX also challenges hours billed for travel time, and the Court will address that challenge below.  Aside from the travel-time issue and the reduction in deposition hours discussed above, CSX does not otherwise oppose the number of hours Cheetham's counsel expended in this matter.

To determine the reasonable hourly rate for an attorney's services, the Court looks to the prevailing market rate at "the place where the case is filed."  <u>Cullens v. Ga. Dep't of Transp.</u>, 29 F.3d 1489, 1494 (11th Cir. 1994).  "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." <u>Am. Civil Liberties Union of Ga. v. Barnes</u>, 168 F.3d 423, 437 (11th Cir. 1999).  Further,

> [a] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate.  And 'market rate' means the hourly rate charged in the local market by someone with expertise in the area who is willing and able to take the case, if such an attorney exists.

<u>Id.</u>

In response to CSX's criticism of the hourly rate she requested for Mr. Paul's services,
Cheetham submitted an affidavit stating that she and her co-plaintiffs[6] attempted to find an
attorney in the Jacksonville area but were unable to find representation. This is not sufficient
to establish a "lack of attorneys practicing in [Jacksonville] who are willing and able to
handle [her] claims." Id. A perusal of the dockets for cases in the Jacksonville Division
involving CSX shows that there are many attorneys in Jacksonville willing to handle
employment cases against CSX; the fact that Cheetham was unable to find even one appears
to be an anomaly. Thus, Mr. Paul's hourly rate must reflect the prevailing market rate in
Jacksonville, not the market rate in Pittsburgh, where his office is located.

To support her theory that $350 an hour is the prevailing market rate in Jacksonville,
Cheetham proffers the affidavit of Neil Henrichsen, Esq., an attorney in Jacksonville who
handles employment matters. Mr. Henrichsen avers that $350 an hour "is a reasonable fee
for an attorney of the undersigned's experience." (Henrichsen Aff. ¶ 6 (Docket No. 267-3).)
As CSX points out, though, Mr. Henrichsen has 10 years' more experience as a litigator than
does Mr. Paul. Thus, the affidavit is not satisfactory evidence of what constitutes a
reasonable hourly rate in the Jacksonville area for an attorney of Mr. Paul's experience and
qualifications. See Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299
(11th Cir. 1988) ("Satisfactory evidence at a minimum is more than the affidavit of the
attorney performing the work . . . Evidence of rates may be adduced through direct evidence

---

[6] This matter was originally filed as a class action, but after summary judgment only
Cheetham's interference claim remained for trial.

of charges by lawyers under similar circumstances . . . .").

For its part, CSX contends that an hourly rate of between $275 and $300 is a reasonable rate in Jacksonville. CSX does not offer any affidavits to establish that this rate is a reasonable rate. However, it is not CSX's burden to establish the reasonable rate; rather, the party seeking fees "bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." Norman, 836 F.2d at 1303. That burden "is not a light one." Ward v. Parks Elec. Co., No. 6:08-cv-1111, 2009 WL 1684455, at *4 (M.D. Fla. June 16, 2009) (Fawsett, J.). Cheetham has failed to provide any evidence, much less "specific and detailed" evidence, from which this Court could determine the reasonable hourly rate for an attorney with Mr. Paul's experience in the Jacksonville area. Thus, the Court must "make the award on its own experience." Norman, 836 F.2d at 1303.

The Court's determination is guided by other decisions in this District regarding "reasonable attorney's fees" in similar cases. For example, in a Fair Labor Standards Act ("FLSA")[7] case venued in Orlando, the court determined that an attorney with 8 years' experience could not claim attorney's fees of $300 per hour. Ward, 2009 WL 1684455, at *5-6. The court instead awarded $250 per hour as a reasonable attorney's fee. Id. at *6. Similarly, Judge Covington declined to award an attorney with fewer than 5 years' experience his requested rate of $300 per hour, finding instead that a reasonable hourly rate

---

[7] As in the FMLA, the FLSA provides that a court "shall" award a prevailing plaintiff his or her "reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b).

in central Florida for an attorney with comparable experience was $165 per hour.  Ellison v.
Sydel Legrande, M.D., P.A., No. 8:08-cv-845, 2009 WL 465034, at *3 (M.D. Fla. Feb. 24,
2009).  In 2007, Judge Corrigan in the Jacksonville Division determined that an attorney with
more than 10 years' experience was entitled to an hourly rate of $250 per hour in a Title VII
case.  Wilson v. Dep't of Children & Families, No. 3:02-cv-357, 2007 WL 1100469, at *4
(M.D. Fla. 2007).  In another matter, Judge Corrigan found reasonable a requested fee of
$238 per hour for an attorney with thirty years' experience.  Citibank N.A. v. Nat'l
Arbitration Council, Inc., No. 3:04-cv-1076, 2007 WL 1231836, at *2 (M.D. Fla. Apr. 26,
2007).

These cases clearly indicate that Mr. Paul's requested fee of $350 per hour is well
above the prevailing market rate in Jacksonville for an attorney with his experience, and is
therefore not reasonable.  The Court finds that a fee of $275 per hour is reasonable in light
of Mr. Paul's qualifications and the rates paid to other attorneys for similar litigation in this
District.  Cheetham's requested attorney's fees will be adjusted accordingly.

Cheetham argues, rather halfheartedly, that her counsel should be compensated above
the lodestar amount, because a failure to adjust the lodestar "will discourage competent
counsel from representing plaintiff [sic]." (Pl.'s Mem. Supp. Mot. Att'y's Fees at 13 (Docket
No. 267).)  But, as the sole case Cheetham cites recognizes, upward adjustments of the
lodestar amount should be reserved for "exceptional" cases.  See Pennsylvania v. Delaware
Valley Citizens' Council for Clean Air, 482 U.S. 711, 728 (1987) ("[P]ayment for the time
and effort involved—the lodestar—is presumed to be the reasonable fee authorized by the

21

statute, and enhancement . . . should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record . . . ."). This is not an exceptional case by any measure, and an upward adjustment to the lodestar is not warranted here.

2.   <u>Costs</u>

CSX opposes three specific costs for which Cheetham requests reimbursement: fees for witnesses not called at trial (a total of $209.31), office supplies for trial ($135.07), and all travel expenses for Cheetham's attorneys and for Cheetham herself (a total of $5,479.02). In addition, CSX asks the Court to exclude from the requested attorney hours the 85 hours the attorneys spent traveling from their office in Pittsburgh to Jacksonville for court proceedings.

Cheetham did not respond to CSX's arguments with respect to the non-trial witnesses and the office supplies and thus appears to concede that these costs are not chargeable. The total cost judgment will therefore be reduced by $344.38.

When determining what costs are reimbursable under the FMLA's cost-shifting provision, the Court is guided by the costs enumerated in 28 U.S.C. § 1920. <u>See, e.g.</u>, <u>Glenn v. Gen'l Motors Corp.</u>, 841 F.2d 1567, 1575 (11th Cir. 1988) (holding that costs available under FLSA's analogous cost-shifting provision are those available under § 1920); <u>Exemar v. Urban League of Greater Miami, Inc.</u>, No. 8-20463, 2009 WL 259677, at *3 (S.D. Fla. Feb. 4, 2009) ("Thus, the substantive law under the FMLA does not expand the costs available under § 1920 . . . ."). Section 1920 contains a specific list of costs that the

22

prevailing party may claim; that list does not include attorney travel.  28 U.S.C. § 1920.

Because travel is not an enumerated cost under § 1920, it is not compensable.  Scelta v.

Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002) (Wilson,

M.J.).  The Court will deduct all travel expenses from the costs for which Cheetham seeks

reimbursement.  The total amount of reimbursable costs is thus $1,710.37.

Whether the hours the attorneys billed in travel time should be included in the

attorney's fee calculation is a separate issue from whether the cost of that travel is chargeable

to CSX.  Cheetham contends that travel time is reimbursable because she was unable to find

local counsel and because "[a] regular fee paying client would certainly be expected to pay

for an attorney's travel time associated with the litigation."  (Pl.'s Reply Mem. at 2 (Docket

No. 277).)  The Court has previously determined that Cheetham did not meet her burden to

establish that she could not find an attorney in Jacksonville to represent her, and the first part

of this argument is therefore unavailing.

The Court disagrees that fee-paying clients expect to be billed for time an attorney

spends traveling on their behalf.  It may be the case that attorneys in some parts of the

country regularly bill for travel time, even if that time is not spent working.  However, in

other parts of the country, such a practice is not common.  It is the Court's experience that,

unless a specific agreement is made with an out-of-town client, travel time is generally not

billable time.  Rather, travel time should be built into the attorney's hourly rate for the

particular case.  It was Cheetham's choice to hire out-of-town attorneys and CSX should not

be penalized for that choice.  See Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1368,

1379 (M.D. Fla. 2010) (Bucklew, J.) ("Although [the prevailing party] can opt to hire an out-of-town lawyer, an opposing party should not be required to pay for this choice unless no local counsel can be found. . . . Therefore, the Court will reduce travel time from the attorney's fees bills."). The Court will deduct the 85 hours in travel time from the attorney's fee award.

       3.    <u>Total award</u>

Cheetham is entitled to recover $1,710.37 in costs from CSX. CSX is liable for Cheetham's attorney's fees as follows:

Gregory Paul:      195.55 hours x $275 per hour = $53,776.25

Bridget Ferris:     62 hours x $175 per hour = $10,850.00

Christine Yeager:   3.5 hours x $75 per hour = $262.50

Total attorney's fees: $64,888.75.

Cheetham may therefore recover from CSX a total of $66,599.12 in attorney's fees and costs.

**CONCLUSION**

CSX is entitled to a remittitur of the damages award to $199,056. CSX is not entitled to judgment as a matter of law or a new trial. Neither is Cheetham entitled to front pay or liquidated damages. Furthermore, Cheetham's requested attorney's fees and costs must be reduced to a total of $66,599.12. The total of damages, fees, and costs that Cheetham is entitled to recover from CSX is $265,655.12.

Accordingly, **IT IS HEREBY ORDERED that**:

1.      CSX's Renewed Motion for Judgment as a Matter of Law (Docket No. 292)

        is **DENIED**;

2.      CSX's Motion for a New Trial or to Alter/Amend the Judgment (Docket No.

        293) is **GRANTED in part** and **DENIED in part**;

3.      The Clerk shall amend the Judgment to reflect a damage award of $199,056;

4.      Cheetham's Motion to Alter/Amend Judgment (Docket No. 264) is **DENIED**;

        and

5.      Cheetham's Motion for Attorney's Fees (Docket No. 266) is **GRANTED in**

        **part** and **DENIED in part**, as set forth above.


Dated: <u>Wednesday, July 6, 2011</u>

                                        <u>s/ Paul A. Magnuson</u>
                                        Paul A. Magnuson
                                        United States District Court Judge